# Beistel, Heller and Loucks v. Westmoreland Motor Car Co., Appellant.

*Real estate—Easements—Exclusive right—Estate in fee—Right of way—Obstruction.*

In a bill in equity for an injunction to restrain defendants from occupying a basement and obstructing a passageway between properties of the plaintiffs and defendants both parties claimed under the same grantor. The deed under which the plaintiffs claimed conveyed "the use forever of the basement under the passageway" and "a right of way over the passageway in common" with the grantor. Later the grantor conveyed to the defendant the adjacent property subject to the plaintiff's right under the deed.

Under such circumstances a decree requiring the removal of the defendant's possessions from the basement and restraining their interference with plaintiffs' use of the right of way will be affirmed.

The words "use forever" conveyed to the plaintiff in fee the use of the basement as then constructed to the exclusion of all others.

Over the passageway itself the plaintiff was given an easement in common with other classes specified. Land or buildings may be divided horizontally for purposes of ownership.

*Equity—Practice—Refusal of court to answer requests for findings of fact—Equity Rule 67.*

Equity Rule 67 revised does not require the court to answer specifically requests for findings of fact.

Argued April 21, 1927. Appeal No. 17, April T., 1927, by defendant from decree of C. P. Westmoreland County, No. 1195 in Equity, in the case of H. Clay Beistel, Cecil E. Heller and Charles H. Loucks, v. Westmoreland Motor Car Company, a corporation, before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmd.

Bill in equity for an injunction to restrain interference with easement rights. Before DOM, J.

The facts are stated in the opinion of the Superior Court.

The Court sustained the bill and awarded an injunction. Defendant appealed.

*Error assigned,* among others, was the decree of the Court.

*William S. Rial,* and with him *H. E. Marker,* for appellant.—The words "use forever" were intended to create an easement not an exclusive use: Chambersburg Woolen Co. v. Hager, 66 Pa. Superior Ct. 63; Duross v. Singer, 224 Pa. 573; Bicking Paper Mfg. Co. v. Worrall, 69 Pa. Superior Ct. 577; Library Company v. Fidelity Trust Company, 235 Pa. 5; Zeigler v. Hoffman, 78 Pa. Superior Ct. 115; Moffitt v. Lytle, 165 Pa. 173; Sheffield Water Co v. Tanning Co., 225 Pa. 614; 26 Corpus Juris 890; Satterthwait v. Gibbs, 288 Pa. 428.

*Albert H. Bell,* and with him *J. Clarke Bell,* for appellee.—The words "use forever" were intended to

create an estate in fee not an easement: Plummer v. Coal & Iron Co., 160 Pa. 483; Powell v. Lantzy, 173 Pa. 549; Jones v. Wagner, 66 Pa. 429.

OPINION BY LINN, J., July 8, 1927:

This appeal is from a final decree requiring defendant to cease occupying plaintiffs' property and from interfering with their enjoyment of a right of way over defendant's property. The bill was filed February 4, 1924. We are to find and give effect to the intention of the parties to certain deeds; no other question is involved here.

Good et al. owned land abutting on Main Street in Greensburg, Westmoreland County. They divided it into three adjoining lots to be referred to here as A, B and C, and a fourth lot to be referred to as D, at the rear of B, separated from it by a narrow alley and abutting on a back street, Maple Avenue. On January 31, 1903, they sold to John W. Pollins, lot A, containing a five story building with basement. It was used as a department store until bankruptcy in 1916. On lot C was a building used as a Court House. Lot B was about 12 feet, 4 inches wide, and constituted a passageway between A and C available to furnish access from Main Street to D. This passageway was covered by a glass roof. The floor of the passageway was at the Main Street level, and below the floor, Good et al. had constructed a basement containing two rooms, one front, the other back, a door between them; this basement occupied the full depth of the lot B, 94 feet. In the back room was installed the heating apparatus for the building on A, with access to and from the basement of A; there was also a communicating door from the front basement room into the basement of A. From the passageway a door led into the department store on A, thus furnishing access via the passageway. The deed to Pollins for A granted and conveyed "the use forever of the basement under the

passageway [B], said passageway being about 12 feet, 4 inches by 94 feet, also, a right of way in common with the [grantors] over the first floor of said passageway ......'' The deed also provided ''It is hereby agreed that the [grantors] their heirs, executors, administrators, or assigns, shall place no obstruction on said first floor of said passageway that shall make the width thereof at no place less than 5 feet, except stairways to and across the alley in the rear, nor in any way obstruct the doors of the passageway or the door to the building hereby conveyed. [The grantors] their heirs or assigns are to maintain a glass roof over the top of this passageway for the purpose of lighting both the passageway and building on lot hereby conveyed, said glass roof not to be less than is now on. [Grantors] reserve the right to support the said glass roof on the building on the lot hereby conveyed ......''

Having so granted lot A, the basement in B, and the right of way over B, the grantors, Good et al. in April, 1903, made another deed finally disposing of such title as they had remaining to B. This deed, conveying B to an Opera House Company, contained the following provision concerning lot A: ''parties of the first part [Good et al.] hereby reserve from the operation of this deed all rights with reference to said described lots of ground granted by them to John W. Pollins by deed dated 31st of January, 1903 ........ [they] also reserve a right of way in common with the party of the second part over the first floor of the building erected on the last described lot'' [B]. The grantee was also required to support the glass roof over B.

At the hearing deeds were offered showing that the Pollins title was in plaintiffs by a deed of Sept. 14, 1923, and the Opera House Company title to B in defendant by a deed of July 31, 1920. The chancellor found that the front basement room and heating plant in the rear basement in B were occupied by the de-

partment store owner until bankruptcy in 1916, and that the passageway, B, at the street level was used in common, a door furnishing access from the passageway to the store. Prior to the changes in use made and complained of in this bill, access to B from Main Street was furnished by "two front doors, that swung open the entire width of the passageway." Until 1916, this passageway contained no furniture or fixtures. In that year the opera house on D was destroyed by fire.

The court found "that in the spring of 1919, Wm. M. Berlin and P. S. Patterson, trading as Westmoreland Motor Car Co., by permission of H. Clay Beistel, trustee, by oral agreement, went into possession of the basement and part of the first floor, with the rights in the passageway of the property described in deed [Good et al. to Pollins] now vested in plaintiffs." On April, 1919, W. M. Berlin and P. S. Patterson purchased the lots B and D, and later conveyed them to defendant corporation, organized to conduct the automobile business, theretofore conducted by Berlin and Patterson. They, as the court found, converted the passageway into a "show room and salesroom, by removing the two front doors and putting in a new front with show windows and a single narrow center door; inside the passageway they placed shelving, counters, cases, etc., they cut a hole in the floor of the passageway and constructed a stairway therefrom to the basement thereunder; they ...... have since occupied the said passageway and the front part of the basement thereunder as a store and stock room for the sale principally of auto accessories, and have locked and kept locked the doors, on their side, leading from the passageway and basement [A] and they lock and keep locked, at their pleasure, the front or entrance door." During that user, plaintiffs have several times demanded possession of their rights in B and defendant has denied them.

The learned court below held that plaintiffs were entitled to the exclusive use of the basement in B and the use in common with defendant of the passageway free from obstructions that would restrict its width to less than five feet except stairways to and across the alley at the rear (leading to D).

As against that view, the learned counsel for appellant contends that B was burdened with an easement— the "use forever of the basement under the passageway ...... also a right of way in common with [grantors] over the first floor of said passageway," and that defendant, as owner of the servient tenement may use the basement and the passageway at any time, and in any way that does not interfere with use by the owner of lot A, the dominant tenement.

The real question then is what is meant by the "use forever of the basement under the passageway." The rule is: "The words of a grant are to receive a reasonable construction and one that will accord with the intention of the parties; but, in order to ascertain their intention courts will look into the circumstances under which the grant was made; Connery v. Brooke, 73 Pa. 80:" Library Co. v. Fidelity Trust Company, 235 Pa. 5, 11; see also Landell & Hamilton, 175 Pa. 327, 335.

It is essential therefore to keep in view that the grant was made by the owner of lot B, and lots A, C and D, who had constructed the improvements on those lots; that he had provided no means of access to the basement from the surface of lot B, but only from the basement in A, and that part of the basement contained the heating apparatus that was an integral part of the structure then existing and used on A. The grantors also assumed the obligation of maintaining the glass roof "over the top of this passageway for the purpose of lighting both the passageway and building on lot hereby conveyed ...... [and] the right to support the said glass roof on the building on the lot here-

by conveyed, and also reserve the right to support the structure now being built in this passageway [leading across the alley from B to the opera house on D] by the use of the wall of the building hereby conveyed. [They also] agree not to further obstruct the light of said passageway. This sentence not to be so construed as to prevent the extension in height of the north wall of the Court House" [C]; compare Landell & Hamilton, 175 Pa. 327, 333, etc..

What do those facts signify? We all agree that by the grant of the "use forever" (Riggs v. New Castle, 229 Pa. 490, 493, Landell & Hamilton, supra), of the basement under B, the grantors intended to and did grant and convey to John W. Pollins in fee the use of the basement as then constructed to the exclusion of all others. In Blauvelt v. Water Co., 75 N. J. E. 351, 72 Atl. 1091, Vice-Chancellor Garrison in construing a conveyance," together with the use of such portion of land" etc., said " . . . . . . I give to the word 'use' as herein employed the meaning of entire, exclusive, complete or any other comprehensive word to express all the purposes to which land can be put; in other words, I think the intention was to grant a fee, and that by the employment of the word 'use' the grantor intended to grant and convey the entire use, that is to say, the entire dominion over the land; under the authorities where the intention in employing the word 'use' is to indicate complete dominion, the word is sufficient to convey the fee."

Land or buildings may be divided horizontally for purposes of ownership; Jones v. Wagner, 66 Pa. 429; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293; Powell v. Lantzy, 173 Pa. 543, 549; Tiffany Real Property, 2nd Ed. Vol. 1, Sec. 252, p. 866, and Sec. 275, p. 945. The stratum represented by the basement in the structure on B became the property of Pollins in fee; with it, he could do as he wished, save that he must not

weaken the foundation walls bounding the basement and supporting the passageway overhead, or otherwise interfere with the stability of the structure; the plaintiffs have Pollins' title.

Over the passageway itself, the deed grants an easement of way in common with other classes specified, and also restricts the use of the overhead space between lots A and C for the purpose of furnishing light to both those buildings. Concerning the easement of way, the grant provides that the owner of the passageway, now the defendant, "shall place no obstruction on said first floor of said passageway that shall make the width thereof at no place, less than five feet, except stairways to and across the alley in the rear, nor in any way obstruct the doors of the passageway or the door of the building hereby conveyed" [A]. The scope of the enjoyment of a right of way is not in dispute; Library Co. v. Fidelity Trust Co., supra; Water Co. v. Tanning Co., 225 Pa. 614.

Findings of fact showing user in violation of the provisions in the deeds have been quoted, and there is evidence to support them, they bind us.

The remaining point presented concerns the omission of the learned trial judge to answer requests for findings of fact as required by equity rules the revised rule does not require it.

The decree is affirmed at appellant's costs.