## Flynn v. Sievers

*Sidney L. Krawitz* and *Roger A. Woltjen,* for plaintiff.

*Eli T. Conner* and *Alfred I. Ginsberg,* for defendant.

DAVIS, P. J., October 22, 1956.—This matter comes before the court on a rule to show cause why a judg-

ment of nonpros entered against plaintiff, William J. Flynn, in an action of replevin should not be opened and plaintiff allowed to proceed.

The record discloses that on July 13, 1950, plaintiff filed an affidavit of value listing the property claimed and stating the value of each item claimed and also filed his bond. At the same time Sidney L. Krawitz, Esq., a member of the Pike County bar, entered his appearance for plaintiff and filed a praecipe for writ of replevin. On July 22, 1950, Eli T. Conner, Esq., entered his appearance for defendant. On August 10, 1950, plaintiff filed his petition setting forth that a part of the goods sought to be recovered could not be located by the sheriff and that the same had been concealed or transferred by defendant and asked for an order for oral examination of defendant, whereupon the court fixed September 18, 1950, for said oral examination. To date this examination has not been made. On September 19, 1950, defendant's attorney entered as of course rule on plaintiff to declare within 20 days. Plaintiff's counsel accepted service *September 12, 1950*.

On September 17, 1951, Eli T. Conner, Esq., defendant's attorney, filed praecipe for judgment of nonpros without notice to plaintiff's attorney. On October 11, 1952, plaintiff filed his petition. alleging, inter alia, that defendant had brought action on the bond on September 30, 1952, to no. 6 September term, 1952, and asked for rule to show cause why judgment of nonpros should not be opened and plaintiff allowed to file his complaint. Rule was issued and proceedings stayed in action on bond. On the same day service of the rule was accepted by defendant's attorney. On December 8, 1952, defendant filed his answer to aforesaid rule. Pursuant to a rule to proceed by defendant filed May 7, 1954, the court on June 11, 1954, fixed June 21, 1954, for taking of depositions before the court. De-

positions were actually taken before the court on October 24, 1954, and the case came on for argument in January, 1956. On April 18, 1956, plaintiff filed his petition for rule to show cause why he should not be permitted to amend his petition to take off judgment of nonpros and rule was granted. On June 18, 1956, defendant filed petition to dismiss said rule which was denied on the same day and the rule made absolute. The amendment to the petition in substance consisted of an allegation that plaintiff had a valid cause of action upon which to proceed in the event the nonpros was taken off the record and attached thereto and made a part thereof was a copy of a complaint proposed to be filed in the event the nonpros was taken off.

Plaintiff rests his right to have the judgment opened on an alleged oral agreement between his counsel, Sidney L. Krawitz, Esq., and defendant's counsel, Eli T. Conner, Esq., indefinitely extending the time for plaintiff to plead.

At the hearing on the petition to open judgment only plaintiff and his counsel testified. At this hearing defendant was represented by Mr. Conner and Alfred I. Ginsberg, of the Philadelphia bar. Plaintiff, William J. Flynn, testified the action was brought to try to recover some equipment he had a chattel mortgage on but he did not know the nature of the papers and so forth filed in this court.

The bar of Pike County consists of six members, two of whom, including Mr. Conner, maintain offices and practice law in the State of New York.

Relating to the practice in the county, Mr. Krawitz on direct examination testified as follows:

"A. Well, the custom has been very informal, it is very seldom that an answer to anything is filed on time, and the agreements are informal, and I have never known them to be in writing, except dealings I have

had in the last couple of years with Mr. Conner, I have usually put in writing."

We will say that we have observed this type of practice in Pike County for more than 10 years but do not commend it.

Mr. Krawitz further testified as follows:

"Q. What was your understanding of the ruling to file complaint within twenty days?

"A. Well, I understood I was going to get a chance to examine his client.

"By Mr. Ginsberg: I object.

"By the Court: State your reason?

"By Mr. Ginsberg: It is not relevant, the rule speaks for itself.

"By Mr. Woltjen: I believe, Your Honor, any understanding between Mr. Conner and Mr. Krawitz at any time as to an understanding in this case as a whole should be honored, even if it was not in writing, and even if there was a rule filed of record.

"By Mr. Ginsberg: I can't agree with that, that is a conclusion, the case is so old any agreement between counsel should be in writing.

"By the Court: Objection overruled.

"A. It was my understanding that Mr. Conner was, I was going to get an opportunity . . . .

"By Mr. Ginsberg: I object, that is a conclusion.

"By the Court: Overruled.

"By Mr. Woltjen: Q. Please proceed?

"A. From our conversation I thought I was going to get an opportunity to examine Mr. Sievers, and then I would file my complaint. This was a replevin action, it was new about then, all our rules had been changed. I remember in our conversation I thought I had a right to examine his client before I filed a complaint. I didn't file my complaint and no notice was given to me. As I said before I had my complaint practically complete there lying in my file and I was waiting an opportunity

to examine Sievers, because what we had asked for was a writ of replevin and we had received very little property as a result of the writ."

There is other testimony that counsel agreed to "get together and work this thing out" and other conversations indicating an agreement to extend the time for filing pleadings without fixing any definite date. The fact that judgment was not taken until more than a year after service on plaintiff's attorney of the rule to plead may indicate that there was an agreement which defendant's counsel had forgotten a year later.

We cannot overlook the fact that although Mr. Conner was in court with associate counsel he did not take the witness stand and deny the statements made by Mr. Krawitz. His silence indicates acquiesence: Weigand v. American Stores Company, 346 Pa. 253. Also see Wigmore on Evidence, 3rd Ed., §1071.

It is clear that no notice of intention to take a default judgment was given to plaintiff's counsel at or near the time of taking the judgment. Although the letter of the law may not require notice, we think a high sense of moral obligation to a fellow member of the bar would impel it, particularly so in a small bar where the practice of taking default judgments without notice is practically unknown: Curran v. James Regulator Company, 154 Pa. Superior Ct. 261.

A careful consideration of the entire record compels us to find that there was an oral understanding or agreement between the attorneys for the parties indefinitely extending the time for plaintiff to plead.

Pa. R. C. P. 201 provides as follows:

"Agreements of attorneys relating to the business of the court shall be in writing, except such agreements at bar as are noted by the prothonotary upon the minutes or by the stenographer on his notes."

Does this rule preclude us from giving effect to the oral agreement? We believe not, particularly under the

circumstances of this case where equity and justice demand it. No cases have been cited to us, nor do we know of any passing on this question directly; however, in 2 Anderson Pa. Civ. Pract. 40, the comment indicates the nonvalidity of oral agreements between attorneys may have been softened by this rule.

We quote:

"The effect of failure to put the agreement into writing as required by the rules is not specified. As the Canons of Professional Ethics of the American Bar Association are adopted for the Pennsylvania Courts, the sanction for failure to reduce to writing is partially supplied by Canon 25 which states that 'it is dishonorable to avoid performance of an agreement fairly made because it was not reduced to writing, as provided by the rules of court'. While the canon makes refusal to abide by the oral agreement dishonorable, it does not necessarily follow that the oral agreement is itself unenforceable. If its existence is admitted, it will be enforced. If its existence is denied, it is likely that the courts, upon the basis of prior authority which is not clearly over-ruled by the text of the procedural rule, will refuse to determine whether an oral agreement in fact exists. Some difficulty of construction arises, however, by virtue of the fact that the appellate court rules provide that agreements of counsel made in open court shall be 'considered of no validity' if not written. The omission from the Pennsylvania procedural rule of such an express statement that an unwritten agreement shall be considered of no validity may be the basis of concluding that it was not the intention of the Supreme Court that the absence of a writing should have this effect."

In the answer to the petition to open judgment, defendant Sievers on information and belief denied the oral agreement alleged in the petition. This answer was signed by defendant's attorney. However, on the

taking of depositions before the court, defendant's attorney, who obviously knew what had taken place between him and plaintiff's attorney, Mr. Krawitz, did not take the stand to deny the agreement testified to by Mr. Krawitz. Silence under such circumstances is tantamount to an admission of the correctness of the facts testified to by Mr. Krawitz. An undenied oral agreement between attorneys is valid: The General State Authority v. United States Fidelity & Guaranty Company, 40 D. & C. 259, 266.

It would appear that the failure to examine defendant orally has led into the present situation. The delays in this matter have been occasioned by both plaintiff and defendant.

The petition to open as amended discloses a meritorious action. A reasonable explanation of the failure to plead has been given. Under these facts the application of equitable principles require that plaintiff be given an opportunity to have his action tried on the merits: Fuel City Mfg. Co. v. Waynesburg Products Corporation, 268 Pa. 441; Borjes v. Wich, 171 Pa. Superior Ct. 505. The rule to open judgment will be made absolute.

### Decree

And now, October 22, 1956, rule to show cause why the judgment of nonpros entered September 17, 1951, should not be opened and plaintiff permitted to file his complaint and proceed in the above entitled action is made absolute, plaintiff to file his complaint within 15 days.

### Opinion

DAVIS, P. J., March 9, 1957.—On October 22, 1956, in the within replevin case the court entered an order directing that a judgment of nonpros be taken off the record and directed plaintiff to file his complaint within 15 days. On October 30, 1956, plaintiff filed his

complaint in compliance with the order of court. On November 15, 1956, defendant filed an appeal in the Supreme Court of Pennsylvania and on November 23, 1956, defendant petitioned the Supreme Court for a supersedeas, and on December 8, 1956, an order was entered by the Supreme Court granting a supersedeas upon the filing of security by defendant in the court below in the amount of $300. Under date of December 7, 1956, counsel for defendant mailed to the court at Stroudsburg, a petition alleging, inter alia, that no judgment of nonpros in the within case had been entered in Pike County and requested the court to forthwith grant an order directing the prothonotary of Pike County to make an entry of said judgment of nonpros nunc pro tunc as of September 17, 1951.

The record discloses on September 19, 1950, defendant's attorney filed with the then prothonotary, J. Russell Eshback, a "paper" entitled "Rule to File Complaint", which paper read as follows:

"Please enter rule on above named Plaintiff to declare within twenty days after service of notice of said rule or judgment, sec. reg. or judgment of nonpros. may be entered.

s/ *Eli T. Conner*

Eli T. Conner

Attorney for Defendant"

Inserted on this paper was the following:

"Service of rule accepted September 12, 1950.

s/ *Sidney L. Krawitz*

Sidney L. Krawitz

Attorney for Plaintiff"

The record indicates no rule upon plaintiff to file a complaint was ever issued by the prothonotary or served on plaintiff or his counsel. On September 17, 1951, approximately a year later, defendant's attorney filed another "paper" with the said prothonotary, which paper read as follows:

"Enter judgment of non-pros against the plaintiff and in favor of the defendant for failure of plaintiff to file his complaint or to declare within twenty days after acceptance of service of a Rule to declare or judgment of non-pros.

s/ *Eli T. Conner*

Eli T. Conner

Attorney for Defendant

Dated: September 15, 1951"

Counsel for defendant takes the position that J. Russell Eshback, prothonotary, whose term of office has now expired, failed in his ministerial function of entering the judgment, that defendant has the right to demand of the prothonotary now in office that he now enter the judgment; however, the prothonotary would not have the power to enter such judgment nunc pro tunc, and it is that phase of the entry upon which defendant requests the order of this court.

Plaintiff maintains that the practice for rule to declare within 20 days is not in accordance with Pa. R. C. P. 1037(a), and therefore, is ineffective. He further maintains that since no rule was actually issued by the prothonotary and served on plaintiff, that the praecipe to enter judgment of nonpros is ineffective.

It is the general rule that the lower court is without jurisdiction to proceed in a cause after an appeal has been taken and a writ of certiorari issued, in the absence of a statute to the contrary. However, the court does have the right to correct its record and supply deficiencies to make it conform to the facts at any time before actual return of the certiorari to the court: Clark v. Clark, 180 Pa. 186, 190. In order to grant the prayer of defendant's petition we would have to do more than correct the court's record or supply deficiencies to make it conform to the facts. As we view it, we would have to pass upon the validity and effect of

pleadings filed and in addition would have to consider the question as to whether or not the prothonotary had the right or duty to enter a judgment of nonpros when the actual rule to plead had not been issued or served. Certainly such matters of law and fact cannot be considered and determined by this lower court after an appeal has been taken to the Supreme Court and a writ of certiorari issued thereon to this court and an order has been entered by the Supreme Court granting a supersedeas: Harwood v. Bruhn, 313 Pa. 337, 341, 342.

And now, March 9, 1957, we find that we are without authority to entertain the petition or to enter the order prayed for.